PHILADELPHIA MANUFACTURERS MUTUAL INSURANCE COMPANY (FORMERLY PHILADELPHIA MANUFACTURERS MUTUAL FIRE INSURANCE COMPANY), PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 66243. Filed December 10, 1959.

*Harry L. Brown, Esq.*, and *Ambrose B. Kelly, Esq.*, for the petitioner.

*William J. Hagan, Esq.*, for the respondent.

MULRONEY, *Judge:* The respondent determined deficiencies in income tax of petitioner for the years 1952 and 1954 in the amounts of $12,985.01 and $43,410.35, respectively.

The sole question is whether petitioner, a mutual fire insurance company, is entitled to file its return and be taxed according to section 204, I.R.C. 1939, and section 831, I.R.C. 1954.

### FINDINGS OF FACT.

Petitioner is engaged in carrying on a mutual fire insurance business as a separate corporate entity in cooperation with and as a

member of a voluntary association known as the Associated Factory Mutual Fire Insurance Companies. This association consists of eight companies, all doing business in exactly the same way.

Petitioner specializes in insuring large industrial risks of good quality where the average risk is around $2 million. The policies it issues are for periods up to 5 years with the bulk of the business constituting 3-year policies. Petitioner's method of charging for insurance consists of requiring, at the time the policy is issued, a premium deposit, the amount of which, on a given dollar risk, is the same regardless of the length of term for which the policies are written and from which petitioner "absorbs" certain sums each month. The policies provide that upon termination the portion of the premium deposit that is "unabsorbed" shall be returned to the policyholder. The amount which is absorbed each month is determined by petitioner according to a formula whereby petitioner for each month takes its total expenses, adds thereto its total incurred losses, and then subtracts therefrom its investment income. Petitioner then calculates an appropriate contribution to reserve and the result is translated into a percentage of its premium deposits in force and such percentage is absorbed or deducted and retained by petitioner. As stated, the balance or unabsorbed portion of the premium deposit in the month of termination is returned to the policyholder. It may also be used by the insured as a part of the deposit premium on renewal. The premium deposit rates are fixed by the Factory Mutual Rating Bureau, which is an organization whose members consist of the eight Factory Mutual Companies.

The large deposits required by the factory mutual group is to furnish the companies the necessary large amounts of capital or surplus, to enable them to meet the capital and surplus requirements of the various States, for the issuance of so many large risk policies. A general line mutual fire insurance company would not ordinarily acquire sufficient surplus to permit its writing such large risks as are written by the factory mutual group.

Petitioner filed its income tax returns for the years 1952 and 1954 with the district director of internal revenue at Philadelphia, Pennsylvania. Its 1952 return was filed on Form 1120M pursuant to the provisions of section 207, I.R.C. 1939. Respondent made a determination of deficiency for said year and petitioner filed a claim for refund with the district director of internal revenue at Philadelphia on the ground its tax should be computed under section 204, I.R.C. 1939. The 1954 return filed by taxpayer was on Form 1120, pursuant to section 831, I.R.C. 1954, the counterpart of section 204, I.R.C. 1939.

The petition asserts error in respondent's determination that petitioner is subject to the provisions of section 207, I.R.C. 1939, for the years prior to 1954 and to sections 821, 822, and 823 of the Internal Revenue Code of 1954 for the year 1954 rather than to the provisions of section 204, I.R.C. 1939, and sections 831 and 832, I.R.C. 1954, for the respective years here involved. The portion of the deficiencies for the years involved, now in dispute, results from respondent's computation under sections 207, I.R.C. 1939, and 821, I.R.C. 1954.

OPINION.

The parties stipulate:

The sole issue now before this Court relates to the respondent's denial of petitioner's assertion that it is entitled to compute its Federal income tax liabilities on Form 1120 pursuant to the provisions of section 204 of the Internal Revenue Code of 1939 and section 831 of the Internal Revenue Code of 1954, rather than on Form 1120M pursuant to the provisions of section 207 of the Internal Revenue Code of 1939 and section 821 of the Internal Revenue Code of 1954.

Section 831 of the Internal Revenue Code of 1954 is the counterpart of section 204, I.R.C. 1939, and section 821 of the Internal Revenue Code of 1954 is the counterpart of section 207, I.R.C. 1939. Hereafter discussion of the statutes will be confined to the statutes as they appear in the 1939 Code.

Section 207, as amended by the Revenue Act of 1942, provides, in general, for the taxing of mutual fire insurance companies either on their net investment income at regular corporation rates or on the sum of their net premiums (after deduction of dividends) and gross investment income at 1 per cent, whichever method produced the larger tax. The statute provides, in part, as follows:

SEC. 207. MUTUAL INSURANCE COMPANIES OTHER THAN LIFE OR MARINE.

(a) IMPOSITION OF TAX.—There shall be levied, collected, and paid for each taxable year upon the income of every mutual insurance company (other than a life or a marine insurance company or a fire insurance company subject to the tax imposed by section 204 and other than an interinsurer or reciprocal underwriter) a tax computed under paragraph (1) or paragraph (2) whichever is the greater and upon the income of every mutual insurance company (other than a life or a marine insurance company or a fire insurance company subject to the tax imposed by section 204) which is an interinsurer or reciprocal underwriter, a tax computed under paragraph (3):

Petitioner admits it is a mutual fire insurance company and therefore taxable under section 207 unless it is within the parenthetical exception of said section as "a fire insurance company subject to the tax imposed by section 204."

Section 204, as amended by the Revenue Act of 1943, provides, in part, as follows:

SEC. 204. INSURANCE COMPANIES OTHER THAN LIFE OR MUTUAL.

(a) IMPOSITION OF TAX.—

(1) IN GENERAL.—There shall be levied, collected, and paid for each taxable year upon the normal-tax net income and upon the corporation surtax net income of every insurance company (other than a life or mutual insurance company) and every mutual marine insurance company and every mutual fire insurance company exclusively issuing either perpetual policies, or policies for which the sole premium charged is a single deposit which (except for such deduction of underwriting costs as may be provided) is refundable upon cancellation or expiration of the policy taxes computed as provided in section 13(b) and in section 15(b).

The parties are agreed that a perpetual policy is one that, by its terms at least, is unending (though it can be terminated) and it has the requirement of a single premium deposit large enough so that the earnings thereon, together with the earnings on other reserve funds, may be sufficient to pay all losses and expenses. Such policies provide in general for the return in full of the premium deposit upon termination, though termination in early years generally results in the deposit returned being reduced by a termination charge.

Petitioner admits it does not issue perpetual policies. But petitioner argues that, in section 204, Congress was legislating with respect to two types of policies. Petitioner's entire argument starts with the contention that section 204, rightly construed, includes not only the mutual fire insurance companies issuing perpetual policies, but also companies such as petitioner, issuing short-term policies of 1 to 5 years, where the method of operation involves the deposit of one sum, called a premium deposit, at the inception of the policy, and a return of the unabsorbed premium deposit when the policy is canceled or expires at the end of the term. Petitioner finds this latter inclusion in the following words of section 204 (a)(1):

every mutual fire insurance company exclusively issuing either perpetual policies, or policies for which the sole premium charged is a single deposit which (except for such deduction of underwriting costs as may be provided) is refundable upon cancellation or expiration of the policy * * *

It is petitioner's argument that it falls squarely within the "or" provision; that it issues policies "for which the sole premium charged is a single deposit," and that this premium, except for deduction of underwriting costs (equivalent, so petitioner argues, to its "absorbed" amounts), "is refundable upon cancellation or expiration of the policy."

Respondent's position is that the "or" provision of the statute is not to be construed as descriptive of another type of insurance policy, other than the perpetual type, but merely explanatory of the perpetual type policy and it has the function of describing policies that might be term in form but perpetual in fact. Petitioner, while admitting the word "or" can sometimes have an interpretive meaning,

argues on brief "the expression 'either-or' must be taken as a correlative conjunction clearly presenting two completely distinct types of mutual fire insurance company operations, *either* of which is intended to qualify under the statute." We would agree with petitioner that the "either-or" expression indicates the use of the word "or" as disjunctive, indicating an alternative. But it does not follow that as so used in this statute, it presents "two completely distinct types" of policies. If the word "or" is given its disjunctive meaning, the alternatives can still be between policies of the same type. The either-or expression is given its disjunctive, alternative meaning, if the statute is construed as *either* perpetual policies by virtue of designation or name, *or* other policies of the termless continuing type, when not actually called perpetuals.

The point is that the intent of Congress to present different, alternative *types* of policies, is not decided, as petitioner seems to assume, by the grammatical construction of the "either-or" expression. If we give the expression "either-or" a grammatical construction, as presenting alternatives, as petitioner contends, the question still remains whether the "or" alternative was to be a policy of the same continuing type, as respondent suggests, or a completely different type, as petitioner suggests.

Petitioner's argument is that the "or" provision does not say the policy there described is to be termless and, therefore, a term policy, for a term as short as 1 year, is within the alternative presented. But there are other plain indications in the statute, and in the history of this legislation that show quite clearly the "or" provision was employed merely to present an alternative policy of the same continuing type as a perpetual policy, even though it might not be specially termed a perpetual.

The general history of the legislation imposing taxes on mutual and stock insurance companies shows the two are taxed on very different bases. Stock, fire, and casualty insurance companies have long been subject to tax under the provisions of section 204 and antecedent statutes. The general tax scheme for such companies is much like other corporation taxation, and the tax base has been approximately the net income as shown on the statements filed with State insurance commissioners.

Until 1942 almost all mutual fire insurance companies were specifically exempt from taxation (section 101 (11) exempting mutuals with gross income of not more than $75,000) and those not so exempt were taxable under section 207. Actually but few mutual fire insurance companies ever paid any tax under section 207 prior to 1942. The mutuals which required their members to make premium deposits to provide for losses and expenses were, under section 207,

prior to 1942, required to include the deposit premiums in gross income but they were allowed to deduct both premium deposits returned to their policyholders and those retained for the payment of losses, expenses, and reinsurance reserves. Moreover, it was conceded by Regulations 103, section 19.207-6, and Regulations 45, art. 572, that in determining the amount of premium deposit so retained, losses and expenses were to be considered as defrayed by investment income first and then by premium income. The result was that no taxable income would remain unless the investment income exceeded both losses and expenses—a situation that would not likely occur in the ordinary mutual fire insurance company. 52 Yale L. J. 573.

The Revenue Act of 1942 made no substantial change in the tax scheme of stock companies other than life. However, it did tax most mutual insurance companies on either their net investment income at the corporation rates, or on the sum of their net premiums (after deduction of dividends) and gross investment income at 1 per cent, whichever method produced the larger tax. The new taxing provisions in the Revenue Act of 1942 constituted a complete revision of section 207 of the Internal Revenue Code of 1939.[1]

The general legislative intent was to provide a base which would guarantee some tax would be paid by all mutuals taxed thereunder. In its report the Senate Finance Committee stated:

The committee bill, therefore, proposes to tax mutual insurance companies other than life or marine upon that one of the following two bases which produces the greater tax. One of these bases is net investment income, to which are applied the rates applicable to corporate incomes generally. The other base is the gross amount of income from interest, dividends, rents, and net premiums, less dividends to policyholders and wholly tax-exempt interest. To this base the rate of 1 per cent is to apply. * * * [S. Rept. No. 1631, 77th Cong. 2d Sess., 1942-2 C.B. 504, 531.]

There is no question but that petitioner became taxable under the Revenue Act of 1942. Petitioner admits this. Moreover there is specific reference in the legislative history to the factory mutual fire insurance companies.

In section 207(b)(2) and (3), as it was revised by the 1942 Revenue Act, it is provided:

(b)(2) NET PREMIUMS.—"Net premiums" means gross premiums (including deposits and assessments) written or received on insurance contracts during the taxable year less return premiums and premiums paid or incurred for reinsurance. Amounts returned where the amount is not fixed in the insurance contract but depends upon the experience of the company or the discretion of the management shall not be included in return premiums but shall be treated as dividends to policyholders under paragraph (3) ;

---

[1] The pertinent portions of section 207, incorporating amendments made after 1942 and applicable to 1952, are set forth in a footnote in *Penn Mutual Indemnity Co.*, 32 T.C. 653 (1959).

(3) DIVIDENDS TO POLICYHOLDERS.—"Dividends to policyholders" means dividends and similar distributions paid or declared to policyholders. The term "paid or declared" shall be construed according to the method regularly employed in keeping the books of the insurance company;

In the Ways and Means Committee Report on the Revenue Act of 1942, there is discussion of the effect of section 207 and the phrase "similar distributions" as used in section 207(b)(2) is explained and defined as follows:

"Similar distributions" include such payments as the so-called *unabsorbed premium deposits returned to policyholders by factory mutual fire insurance companies*. This is distinguished from the more usual "return premium" where the amount is fixed in the insurance contract and does not depend upon the experience of the company or the discretion of the management. [H. Rept. No. 2333, 77th Cong., 1st Sess., 1942–2 C.B. 372, 458. Emphasis supplied.]

The Senate Finance Committee Report on the Revenue Act of 1942 also specifically mentioned the factory mutual companies. The Senate Report No. 1631, 77th Cong., 2d Sess., 1942–2 C.B. 504, 617, states:

Section 207 (b)(2) defines "net premiums" in a manner that produces substantially the same effect as in section 204 (b)(5) of the Code, and includes deposits and assessments, but excludes amounts returned to policyholders which are treated as dividends under section 207 (b)(3).

Section 207(b)(3) defines "dividends to policyholders" as dividends and similar distributions paid or declared to policyholders. *Similar distributions include such payments as the so-called unabsorbed premium deposits returned to policyholders by factory mutual fire insurance companies.* [Emphasis supplied.]

Regulations 111, section 29.207–3, make further specific reference to the factory mutual fire insurance companies, again stating the words "similar distributions" as used in the statute "include such payments as the so-called unabsorbed premium deposits returned to policyholders by factory mutual fire insurance companies."

After the passage of the Revenue Act of 1942, petitioner filed its returns as a mutual company under section 207 of the Internal Revenue Code of 1939. It continued to file its returns under said section each year until 1954. In 1954 the entire Code was revised without changing the substantive sections of the law here involved. It was not until 1954 that petitioner filed an amended return for the year 1952 under the provisions of section 204, and also a return for the year 1954 under section 204.

We turn now to the legislative history of the pertinent part of section 204. When the Revenue Act of 1942 was enacted it became immediately apparent the plan of taxation therein provided would work inequitably for the mutual perpetual companies. That plan for taxing mutuals, as previously stated, provided for a tax of 1 per cent on the mutuals' principal source of income, premiums—out

of which losses and expenses were paid. As earlier stated, the perpetuals derive by far the largest portion of their income from investments and pay their losses and expenses from the investment fund income. It is readily apparent that, if the perpetuals were to be denied deductions for their losses and expenses, the result would be an overstatement of their true income. It was to correct this inequity that Congress, in 1943, amended section 204, making perpetuals taxable under the provisions of that section, with certain adjustments; amended section 207 by taking fire insurance companies taxable under section 204 out from under section 207, and made the law retroactive to 1942.

The addition to section 204 was made by the Senate Finance Committee in executive session in December 1943. This addition provides, in part:

SEC. 129. MUTUAL FIRE INSURANCE COMPANIES ISSUING PERPETUAL POLICIES.

(a) TAXABILITY UNDER SECTION 204.—Section 204 (a) (relating to tax on insurance companies other than life or mutual) is amended as follows:

(1) by inserting in paragraph (1) after "every mutual marine insurance company" the following: "and every mutual fire insurance company exclusively issuing either perpetual policies, or policies for which the sole premium charged is a single deposit which (except for such deduction of underwriting costs as may be provided) is refundable upon cancellation or expiration of the policy";

The bill, which was passed by the Senate and concurred in by the House (with a change of the section number to 135) goes on to provide in subsequent sections that the single premium deposit for the described companies shall not be included in gross income; that the described companies shall not be taxable under section 207; and that the law shall be applicable to the years after December 31, 1941.

The motive force behind the enactment of this amendment was the inequitable treatment of section 207 when applied to a mutual like a perpetual that paid losses out of investment income.

The report of the Senate Finance Committee with respect to this bill explains the difficulties of companies issuing perpetual policies or single premium policies where losses were paid out of investment income. It shows quite clearly the purpose of the bill was to grant relief to those companies.

We have set forth in a footnote extracts from the report of the Senate Finance Committee and the Conference Committee report with respect to this bill.[2] These statements preclude any intention

---

[2] Mutual Fire Insurance Companies Issuing Perpetual Policies.

Under existing law, fire insurance companies issuing perpetual premium policies are discriminated against by being taxed under section 207 of the Internal Revenue Code. One of the bases upon which companies are taxed under that section is net premium income. Since perpetual companies derive the largest part of their income from investments, and meet their losses and expenses from that source, it is clear that section 207

of Congress to cover the factory mutuals under the bill; or, in fact, any mutuals other than those paying losses from investment income.

The fact that the amendment is entitled "Mutual Fire Insurance Companies Issuing Perpetual Policies" is an indication that the amendment is to be limited to companies that can be said to be perpetuals or single premium continuing policies. As pointed out earlier, the legislative history of the Revenue Act of 1942 shows references to the factory mutuals and the deliberate inclusion of these companies under that statute. There is not a word in the legislative history of the 1943 amendment of section 204 which shows any intention to take the factory mutuals issuing short-term policies out from under section 207. The wording of the reports shows clearly the amendment was to be confined to the companies requiring single premiums for permanent insurance. These reports contain "or" clauses: "mutual fire insurance companies * * * issuing perpetual

does not reach an equitable result as applied to them. Accordingly, your committee bill provides that fire insurance companies issuing exclusively perpetual or refundable single insurance premium policies are made taxable under section 204 of the Internal Revenue Code, which is applicable to stock companies. Under this provision, these companies are not required to include single deposit premiums in income and are denied any deduction for dividends paid or declared. This amendment is made applicable to taxable years beginning after December 31, 1941.

\* \* \* \* \* \* \*

Section 129. Mutual Fire Insurance Companies Issuing Perpetual Policies.

This section, for which there is no corresponding provision in the House bill, provides for the taxability of fire insurance companies exclusively issuing perpetual or refundable single premium policies under section 204 of the Code, relating to stock insurance companies other than life and mutual marine insurance companies, instead of as at present under the provisions of section 207 of the Code, relating to mutual insurance companies other than life or marine.

Section 207, as amended by the Revenue Act of 1942, affects companies issuing perpetual and single premium policies in a discriminatory manner. The 1942 amendments were designed to obtain a suitable tax base for mutual companies as a class. The most important group were the companies issuing the usual type of renewable short-term policies. Generally speaking, the tax imposed by section 207 is levied either on investment income at regular corporate rates, or on the gross amount of income from interest, dividends, rents, and net premiums (less certain deductions) at the rate of 1 per cent, whichever tax is greater. No deductions are allowed from investment income for losses or general business expenses. The plan works equitably for companies issuing the ordinary type of short-term policies, since their main income is from premiums and their losses and expenses are paid out of this income which is taxed only at the 1 per cent rate. The perpetual companies, however, derive by far the largest portion of their income from investments, and meet their losses and expenses from that fund. The denial of deductions for such losses and expenses results in an overstatement of their true income. This is corrected by applying to these companies the provisions of section 204 with slight adjustments. Principally these adjustments consist of excluding from gross income of such companies single deposit premiums received (but not payments of quotas or assessments), and of disallowing any deduction for dividends paid to policyholders. [S. Rept. No. 627, 78th Cong., 1st Sess., 1944 C.B. 973, 996 and 1024.]

\* \* \* \* \* \* \*

Amendment No. 80: This section, for which there is no corresponding provision in the House bill, provides that mutual fire insurance companies exclusively issuing perpetual or refundable single premium policies, shall be taxed substantially as stock insurance companies other than life and mutual marine insurance companies under section 204 of the Code instead of as at present under the provisions of section 207 of the Code, applicable to mutual insurance companies other than life or marine. The House recedes with a change in section number. [H. Rept. No. 1079, 78th Cong., 2d Sess., 1944 C.B. 1059, 1073.]

or refundable single premium policies" (H. Rept. No. 1079), "fire insurance companies issuing * * * perpetual or refundable single insurance premium policies * * *." (S. Rept. No. 627.) This wording indicates the language of the amendment was not to describe two different *types*, such as perpetual and short-term policies, as petitioner argues, but rather policies that might be different in name but of the same type, to-wit, policies providing for a single refundable premium that purchased continuing, termless insurance.

Other language of the reports shows the amendment was to apply to those companies that derive by far the largest part of their income from investments and meet their losses from this fund. This is true of the perpetuals but not at all true of the factory mutuals, where the largest proportion of income is from premiums.

Examination of the annual statement submitted to the State insurance commissioners and the tax returns of the petitioner show that it had the following:

| Year | Investment income | Statutory premiums earned | Premiums earned on factory mutual basis |
|---|---|---|---|
| 1952 | $266, 061. 36 | $3, 379, 067. 22 | $942, 883. 06 |
| 1954 | 347, 187. 62 | 3, 761, 514. 00 | 994, 543. 13 |

Taking the figures most favorable for the petitioner, those which adjust the earned premiums to the factory mutual basis, it is quite apparent that petitioner does not "derive by far the largest portion of their [its] income from investments" nor does it meet its losses and expenses from this fund; rather its "main income is from premiums" which applies to mutual companies as a class issuing the "ordinary type of short-term policies." (S. Rept. No. 627.) It is obvious such a company as the petitioner was not meant to fit under section 204 according to the report of the Senate Finance Committee; since its main income is from premiums, it was meant to be among the ordinary type of mutual company covered by section 207 of the 1939 Code.

When we proceed to the provisions of the 1943 amendment with respect to the tax base of the described companies, it is even more clear that a factory mutual such as petitioner was not intended to be included. The amendment provided the described companies were not to include the premium deposits in income, and, likewise, they were to receive no deduction for dividends paid to the policyholders. If petitioner is right, then the amendment does not provide for any source of income to it except its investment income. Since it is obvious that petitioner's operation is such that it is not intended it will ever have enough investment income to pay losses and expenses, the amendment would, if literally applied to petitioner, provide for no tax.

Even petitioner would not argue for a legislative intent that it be exempt. Petitioner tries to adjust the law to its operation by reporting its premium income (absorptions of deposit premiums) in the returns it filed under section 204. This was done upon a strange theory that first likens the absorptions to the "surrender charge" of perpetuals and then concluding the amendment did not intend such charges to be excluded from income.

In petitioner's operation the "absorptions" are for the purpose of creating a fund to pay losses—the usual purpose of premium payments in the ordinary mutual—and such absorptions are not at all similar to the "surrender charge" or "termination charge" of a perpetual (made only in early years) where losses are paid out of investment income.

A reading of section 204 shows that the statute cannot apply equitably or reasonably to a company that operates on the perpetual principle where it pays its losses and expenses from investment income and a company that operates like petitioner, which pays its losses and expenses from premium income.

The interpretation placed upon section 204 to the effect that it applies to a mutual issuing short-term policies and paying losses out of premium payments, would flout the whole history and purpose of the 1943 amendment. It is abundantly clear from the authoritative legislative history that the need for the amendment of 1943 arose from the fact that the mutuals there described paid losses and expenses from investment income. Such companies had need for relief from a taxing plan (section 207) designed for the ordinary mutual that paid losses out of premium funds. It could never have been intended that petitioner, which did not suffer the trouble to be relieved, would be covered by the 1943 amendment.

The fact that the provisions of the Act do not fit petitioner's operation, and the overwhelming legislative history, compel us to hold petitioner was not within the mutual fire insurance companies described in section 204(a)(1), I.R.C. 1939, or section 831, I.R.C. 1954, and that respondent was right in determining that petitioner is taxable for the year 1952 under the provisions of section 207, I.R.C. 1939, and for the year 1954 under the provisions of section 821, I.R.C. 1954.

*Decision will be entered under Rule 50.*